COORS BREWING COMPANY,
a Colorado corporation,
Plaintiff,

v.

MILLER BREWING COMPANY, a Wisconsin corporation; Molson Breweries, an Ontario partnership; The Molson Companies Limited, a Canadian corporation; Molson Breweries of Canada Limited, a Canadian corporation; and Molson Breweries U.S.A., Inc., a Delaware corporation, Defendants.

Civ. A. No. 94–K–728.

United States District Court,
D. Colorado.

June 6, 1995.

James E. Scarboro, Tim Atkeson, Arnold & Porter, Denver, CO, Jerome I. Chapman, Douglas L. Wald, Arnold & Porter, Washington, DC, for Miller and Molson, U.S.A.

Jane Michaels, James E. Hartley, Holland & Hart, Denver, CO, A. Paul Victor, Debra J. Pealstein, Weil, Gotshal & Manges, New York City, for Molson Companies Ltd.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Defendant Miller and Molson brewing companies, together with certain related importing and distribution entities, move to dismiss brewing rival Coors' antitrust claims against them for lack of subject matter jurisdiction, lack of standing and failure to state a claim upon which relief can be granted. The three Molson defendants that are Canadian entities also dispute this court's *in personam* jurisdiction over them and move to dismiss Coors' complaint on that independent ground as well. For the reasons set forth below, I deny both motions.

### I. *Background*

Coors Brewing Company ("Coors") filed this action against Miller Brewing Company ("Miller Brewing"), Molson Breweries of Canada Limited ("Old Molson"), Molson Breweries,[1] and certain Miller–Molson affiliated importing and distribution entities,[2] alleging the "North American Strategic Brewing Alliance" (the "Alliance") announced by Miller Brewing, Molson Limited and Foster's on January 14, 1993 violates the Clayton and Sherman antitrust acts. Pursuant to the Alliance, Miller Brewing bought Molson USA, acquiring a 20% equity interest in Molson Breweries and representation on its board of directors. Miller Brewing also obtained an exclusive license over the Molson's and Foster's beer brands in the United States.

Thomas Cullen, Jr., Jone, Day, Reavis & Pogue, Donald I. Baker, Washington, DC, Tim L. Campbell, Russell Carparelli, Matthew S. McElhiney, Bradley, Campbell, Carney & Madsen, Golden, CO, for plaintiff.

1. Molson Breweries is a partnership owned by The Molson Companies Limited ("Molson Limited") (40%), Foster's Brewing Group ("Foster's") (40%) and Miller (20%). Old Molson is a wholly owned subsidiary of Molson Breweries.

2. Molson Limited and Miller-owned Molson Breweries, U.S.A., Inc. ("Molson USA") are the other party defendants in this action. Miller

Brewing of Canada, Limited ("Miller Canada") was dismissed from this action by stipulation of the parties. For ease of reference, "Miller" will be used to refer collectively to defendants Miller Brewing and Molson USA and "Molson" will be used to refer collectively to defendants Molson Limited, Old Molson and Molson Breweries.

At the time the Alliance was announced and since 1985, Coors and Old Molson were parties to a licensing agreement ("Licensing Agreement") whereby Old Molson obtained the right to market, distribute, and sell all Coors brands of beer in Canada. Pursuant to the Licensing Agreement, Coors claims it provides Old Molson with its proprietary formula and brewers yeast, competitive strength studies, positioning strategies, advertising proposals, and other confidential marketing studies and business information. The Licensing Agreement contains a 10–year notice of termination clause.

Because Old Molson is wholly owned by the entity in which Miller Brewing, through the Alliance, acquired a 20% interest and board membership, Coors contends Miller Brewing now has access to Coors' "vital North American proprietary and strategic information" and the power to restrain Coors as an independent competitive force in the United States and North American markets. Compl., ¶¶ 38–41. Coors contends its presence in this market is necessary to prevent Miller and Anheuser–Busch from having a duopoly in the United States, where they already control two-thirds of the market.[3] Coors seeks dissolution of the Licensing Agreement or relief from the 10–year notice of termination clause; a permanent injunction prohibiting Miller Brewing and Molson USA from having any interest in or participating on the board of Molson Breweries or an order requiring Miller to dispose of its interest in Molson Breweries so long as Old Molson is Coors' exclusive licensee in Canada; a permanent injunction prohibiting Molson and its present and former employees from disclosing any Coors marketing or stra-

tegic information to Miller;[4] and treble damages.

Coors contends not only that the Molson–Miller Alliance violates United States antitrust laws, but also that Molson's participation in the Alliance breaches the Coors–Molson Licensing Agreement. Thus, at the same time it initiated this antitrust litigation, Coors also initiated arbitration proceedings against Old Molson in Canada under the Licensing Agreement. Asserting Coors brought the antitrust action merely to circumvent its duty to arbitrate under the Agreement, the Molson defendants moved for a stay pending resolution of the arbitration proceedings in Canada. Molson argued arbitration would settle the factual disputes upon which Coors' antitrust claims were based. Chief Judge Richard P. Matsch, to whom this case originally was assigned,[5] denied the motion for stay and Molson appealed.

In a published opinion issued March 30, 1995, the Tenth Circuit affirmed in part and reversed in part the order denying Molson's motion for stay. *Coors v. Molson et al.*, 51 F.3d 1511 (10th Cir.1995). The panel affirmed Judge Matsch's order refusing to stay the action against Miller. 51 F.3d at 1518. With respect to the action against Molson, the panel agreed Coors' allegations regarding market concentration and the Alliance as a restraint of trade were unrelated to the Licensing Agreement and thus not subject to a stay, and preliminarily agreed Coors' allegations regarding the anticompetitive effects of Miller's control over Molson were unrelated to the Agreement and also not subject to a stay.[6] The panel disagreed, however, that allegations regarding Molson's use or misuse of confidential Coors' product and marketing

---

**3.** Coors further alleges Miller has an incentive to restrain Coors unlawfully and to leverage its access to Coors' proprietary and strategic information because Coors' growth represents a "threat" to Miller, particularly in the important "light" beer market that accounts for 40% of Miller's volume and in which Coors has obtained a 21.5% share.

**4.** As an example, Coors alleges Jefferson J. Carefoote, a former Old Molson employee with "intimate knowledge" of Coors' competitive strength and strategies, is now a Vice President of Miller Brewing's wholly owned subsidiary Molson USA.

**5.** Upon determination that a workload imbalance was affecting the parties adversely, Chief Judge Matsch reassigned this case to me on February 23, 1995.

**6.** *See* 51 F.3d at 1513, 1518. The Tenth Circuit invited this court to reconsider the latter conclusion once the parties have had an opportunity to conduct discovery and refine their theories. *Id.* at 1518.

information were unrelated to the Licensing Agreement, and reversed Judge Matsch's order as it applied to them. *Id.* at 1513.

Thus, with the exception of the dispute between Coors and Molson over Molson's access to and use of Coors' confidential information, this antitrust action will proceed, in theory at least,[7] unimpeded by the Canadian arbitration. *See generally Block 175 Corp. v. Fairmont Hotel Management Co.,* 648 F.Supp. 450, 453–54 (D.Colo.1986) (refusing to delay discovery pending arbitration).

## II. *Merits*

Coors claims the acquisition by Miller Brewing of an equity interest in the entity owning and controlling Old Molson will have an anticompetitive effect on the United States beer market in violation of § 7 of the Clayton Act, 15 U.S.C. § 18. (Compl., ¶¶ 46–48.) Coors claims the Miller–Molson Alliance, as well as the Coors–Old Molson Licensing Agreement now that Miller Brewing is a partner in the Alliance, are combinations or conspiracies in restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. (*Id.,* ¶¶ 49–53.) Coors seeks both injunctive relief and treble damages.[8]

### A. *Subject Matter Jurisdiction*

■ Defendants assert Coors' complaint should be dismissed for lack of subject matter jurisdiction under the Foreign Trade Antitrust Improvement Act of 1982 ("FTAIA"), arguing Coors' claims lack the requisite "direct, substantial, and reasonably foreseeable" relationship to United States, as opposed to Canadian, commerce. Coors contends the FTAIA is inapplicable because Coors' claims do not relate exclusively to foreign commerce, but arise from domestic conduct affecting domestic trade or commerce.

The FTAIA amends the Sherman Act to provide:

### § 6a. Conduct involving trade or commerce with foreign nations

Sections 1 to 7 of this title shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless—

(1) such conduct has a direct, substantial, and reasonably foreseeable effect—

(A) on trade or commerce which is not trade or commerce with foreign nations; or

(B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and

·(2) such effect gives rise to a claim under the provisions of sections 1 to 7, other than this section.

If section 1 to 7 of this title apply to such conduct only because of the operation of paragraph (1)(B), then [these Acts] shall apply to such conduct only for injury to export business in the United States.

15 U.S.C. § 6a (1995 Pock Pt.).[9]

Although cases applying the FTAIA are few, its "inelegant" language has been inter-

---

7. To the extent Coors relies on Molson's access to its confidential and proprietary market information in its control claim against Miller, the practical effect of the Tenth Circuit's ruling is less clear. It is difficult to determine at this stage of the proceedings how a stay of Coors' dispute with Molson over Molson's access to confidential information will affect Coors' ability to conduct discovery on its control claim against Miller.

8. Section 4 of the Clayton Act permits the recovery of damages by "any person ... injured in his business or property by reason of anything forbidden in the antitrust laws." 15 U.S.C. § 15 (1988). Section 16 entitles "any person ... threatened [with] loss or damage by a violation of the antitrust laws" to obtain an injunction. *Id.* § 26.

9. A brief history leading up to the enactment of § 6a is in order. Since the early cases involving concerted activities by shipping companies engaged in the transport of passengers and cargo to and from the United States, it has been clear that an activity partly within and partly outside the United States falls within the coverage of the United States antitrust laws. *See, e.g., Thomsen v. Cayser,* 243 U.S. 66, 88, 37 S.Ct. 353, 360, 61 L.Ed. 597 (1917). Activity outside the United States, however, has long been subject to the United States' antitrust jurisdiction only if it has an anticompetitive effect inside the United States. *United States v. Aluminum Co. of America,* 148 F.2d 416 (2d Cir.1945) ("*Alcoa*"). Before enactment of § 6a in 1982, the "effects test" articulated by Judge Learned Hand in *Alcoa* had been subject to different applications in the various circuits, becoming an "effects only" test, a "direct or substantial effects" test, a "direct and substantial effects" test, and a "some effects,

preted to mean that with the exception of claims brought by domestic importers, the Sherman Act will not apply to conduct affecting foreign markets, consumers or producers unless there is also a direct, substantial, and reasonably foreseeable effect on the domestic market (subsection (1)(A)) or on opportunities to export from the United States ((1)(B)). P. Areeda & H. Hovenkamp, *Antitrust Law* ¶ 236'a at pp. 306–07 (1993 Supp.); *see McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 813 (9th Cir.1988) (allegations of a refusal to deal in foreign markets injuring only foreign customers and plaintiff insufficient to confer antitrust jurisdiction under FTAIA); *The In Porters, S.A. v. Hanes Printables, Inc.*, 663 F.Supp. 494, 498–99 (M.D.N.C.1987) (French garment distributor had no cause of action under federal antitrust laws absent evidence of injury within the United States); *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F.Supp. 920, 922–23 (E.D.N.Y.1985) (court lacked jurisdictional nexus under the FTAIA where restraint of trade and conspiracy claims involved exclusively lost business and anticompetitive effects in St. Kitts). Thus, anticompetitive conduct confined to exports with no significant domestic spillover would fall outside the United States' antitrust jurisdiction by virtue of the FTAIA, as would anticompetitive conduct that did not significantly affect imports into the United States. Areeda & Hovenkamp, ¶ 236'a at pp. 306–07 (1993 Supp.); *see* Murphy, *supra* n. 8, at 786–91.

Given the integrated nature of the North American beer market and the fact the principal parties are American companies competing in that market, it seems a fine distinction indeed to assert defendants' alleged conduct impacts Canadian—but not American—

markets, producers or consumers. I need not address this issue, however, because I find Coors' allegations, taken as true, establish that defendants' conduct satisfies both subsections (1)(A) and (B) of the FTAIA because it has a direct, substantial, and reasonably foreseeable effect not only on Coors' export trade with Canada, but also, albeit less directly, on the United States beer market and the consumers in that market.

According to Coors, the Miller–Molson Alliance subjects Coors to the Catch–22 of having either to share confidential information with rival Miller Brewing or to unwind its Canadian brewing and distribution relationship with Molson. Coors asserts it has already been forced to make decisions and to alter its business strategies as a result. Coors also alleges the Alliance threatens its status as principal competitor to Miller and Anheuser–Busch in the United States beer market which, given the concentration in that market, weakens domestic competition and promotes a Miller/Anheuser–Busch duopoly. Defendants' effort to circumscribe Coors' allegations to anticompetitive effects in Canada alone ignores both Coors' allegations regarding its export activities as well as the blurred line between the domestic and foreign effects of conduct in the North American beer market. I am unpersuaded and decline to dismiss this action for lack of subject matter jurisdiction.[10]

### B. *Personal Jurisdiction*

■ Canadian defendants Molson Breweries, Molson Limited and Old Molson assert Coors has failed to make *prima facie* showings of personal jurisdiction over them to withstand a motion to dismiss. Each contends it lacks sufficient contacts with Colorado to confer either general or specific person-

regardless of whether they are intended or substantial," test. *See* Daniel T. Murphy, *Moderating Antitrust Subject Matter Jurisdiction: The Foreign Trade Antitrust Improvement Act and the Restatement of Foreign Relations Law (Revised)*, 54 U.Cin.L.Rev. 779, 806 (1986) (footnotes and citations omitted). Section 6a was Congress' attempt to temper what many perceived to be the over-application of United States antitrust laws to extraterritorial commercial conduct under the more expansive of these tests. *See id.* at 779, 782–84 (citations to legislative history omitted).

10. I note here the guidance provided by the American Law Institute's comprehensive restatement of United States antitrust jurisdiction law set forth in the Restatement (Third) of Foreign Relations Law § 415 (1987). While the Restatement's "reasonableness" approach focuses on balancing United States and foreign interests, it synthesizes and reviews both the legislative and judicial efforts in the United States to control the extraterritorial application of federal antitrust laws and should prove helpful in future efforts to apply the FTAIA. *See generally* Reporters' Notes, § 415 pp. 288–94.

al jurisdiction on this court. (Defs.' Mot. Dismiss for Lack of Personal Jurisdiction at 2–3.) Coors demurs, arguing that in suits brought under the Clayton Act, the relevant forum with which these defendants must have minimum contacts is the United States, not Colorado. (Coors' Opp. to Mot. Dismiss for Lack of Personal Jurisdiction at 7–8.) Coors contends the Molson defendants have extensive contacts with the United States by virtue of their beer sales in this country, achieved through their alliance with Miller, and their contractual relationships with Coors and others. Moreover, Coors argues, the Molson defendants have "purposely availed" themselves of this court's jurisdiction by causing antitrust injury in this forum. *Id.* at 12.

I reject out of hand the Molson defendants' contention that the exercise of personal jurisdiction over them in this case would be "unfair," "inappropriate" and a violation of due process. (Defs.' Mot. Dismiss for Lack of Personal Jurisdiction at 2–3.) In these days of NAFTA [11] and a deemphasis in particular on the border between Canada and the United States, the assertion that these Canadian companies, whose products can be found on the shelves of virtually every convenience store and supermarket in Colorado and whose extensive business relationships with Miller and Coors form the basis of this litigation, lack sufficient minimum contacts with the forum to avoid "offend[ing] traditional notions of fair play and substantial justice" if they are required to defend Coors' claims here,[12] rings hollow. At a minimum, Coors has established a *prima facie* showing of personal jurisdiction over each of the Molson defendants sufficient to warrant further inquiry.[13] Accordingly, the Motion to Dismiss for Lack of Personal Jurisdiction filed by Molson Breweries, Molson Limited and Old Molson is denied.

### C. *Antitrust Injury—Standing*

Having determined I have jurisdiction over the parties and their claims, I turn next to defendants' assertion that Coors lacks standing to obtain either injunctive relief or treble damages under the Clayton Act because it has alleged no cognizable antitrust injury. Defendants rely on *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986) and its progeny to argue the circumstances under which one competitor will have standing to maintain an antitrust action against another are "very limited" and do not exist in this case. (Miller Defs.' Mot. Dismiss at 9–10.) Where the challenged conduct is a merger or acquisition, defendants argue a mandatory element of standing is proof that the post-merger firm is likely to engage in predatory pricing. (Mot. Dismiss at 10, Reply Supp. Mot. Dismiss at 4–5.) Coors disagrees predatory pricing is the only cause of actionable antitrust injury between competitors, and main-

---

**11.** The North American Free Trade Agreement (NAFTA) was signed into law by President Clinton on December 27, 1993. Its purpose was to expand trade and the economic relationships between Canada, Mexico and the U.S. by reducing barriers and liberalizing restraints on investment and services.

**12.** *See International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

**13.** I reject the Molson defendants' argument in their Reply that Coors has confessed the motion to dismiss by failing to refute the affidavit testimony attached to Molson's opening brief with affidavits of its own as hypertechnical. Affidavits prepared in support of Coors' Motion for Preliminary Injunction—part of the record in this case—contain statements by Peter Coors and Mark Stankovic recounting at least one visit to Colorado by Bruce Pope, the President and CEO of Molson Breweries (a partnership owned in part by Molson Limited), to inform Coors of Molson's decision to enter into the Alliance, *see* Coors Affid. at ¶ 8; and documenting the free flow of information and communications between Old Molson and Coors in Colorado, *see* Stankovic Affid. at ¶ 6. I also note an on-line review of pending cases in which the Canadian Molson defendants are parties revealed at least one case in which Molson Breweries (ergo, Molson Limited) and Old Molson have submitted to the jurisdiction of a federal court. *See Labatt v. Molson Breweries, et al.*, No. 93–75004 (E.D.Mich.1993) (while defendants deny minimum contacts with the forum, they do not challenge venue there). In at least two other cases, the submission by these defendants to the courts' jurisdiction is unclear. *See Pearl Brewing Co. v. Miller Brewing Co., et al.*, No. SA–93–CA–205, 1993 WL 424236 (W.D.Tex.1993) (opinion dismissing action for lack of standing published at 1993 WL 424236); *Labatt v. Molson Breweries, et al.*, Nos. 93–CV–75004, 94–CV–71540, 1995 WL 23603 (S.D.N.Y.1995) (discovery ongoing).

tains its allegations are sufficient to establish both antitrust injury and standing to sue. (Coors Mem. Opp. Miller Mot. Dismiss at 18–20.)

■ Standing is an essential element in any private antitrust action under § 4 or § 16 of the Clayton Act. *Reazin v. Blue Cross & Blue Shield of Kansas, Inc.*, 899 F.2d 951, 960–61 (10th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990) (applying *Cargill, Inc. v. Monfort, Inc.*, 479 U.S. 104, 110, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986) and *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). *See City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 652 n. 14 (10th Cir.1992); *Sharp v. United Airlines, Inc.*, 967 F.2d 404, 406 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 464, 121 L.Ed.2d 372 (1992); *Anesthesia Advantage, Inc. v. Metz Group,* 759 F.Supp. 638 (D.Colo.1991). The following factors are to be considered in evaluating standing:

> the causal connection between the antitrust violation and the plaintiff's injury; the defendant's intent; the nature of the plaintiff's injury; the directness or the indirectness of the connection between the plaintiff's injury and the unlawful market restraint; the speculativeness of the plaintiff's damages; and the risk of duplicative recoveries or ... the danger of complex apportionment of damages.

*Reazin,* 899 F.2d at 962, n. 15 (citing *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 544, 103 S.Ct. 897, 911–12, 74 L.Ed.2d 723 (1983)). *See generally* Page, *The Scope of Liability for Antitrust Violations,* 37 Stan.L.Rev. 1445, 1483–85 (1985); Areeda & Turner, *Antitrust Law,* ¶ 334.1 (Supp.1989).

The "nature of the plaintiff's injury" factor implements the requirement that only antitrust injuries are redressable under § 4 of the Clayton Act. *Reazin,* 899 F.2d at 962, n. 15. Because standing does not exist absent antitrust injury, I review the sufficiency of Coors' Complaint on this threshold issue first.

### 1. Antitrust Injury

■ "Antitrust injury" is defined, somewhat circuitously, as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Cargill,* 479 U.S. at 109, 107 S.Ct. at 489 (quoting *Brunswick,* 429 U.S. at 489, 97 S.Ct. at 697). This definition reflects a fundamental principle in antitrust law that an injury, even if causally related to an antitrust violation, will not qualify as an "antitrust injury" unless it is attributable to an anticompetitive aspect of the practice under scrutiny. *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 1889, 109 L.Ed.2d 333 (1990) (applying *Cargill* ). The point is to prevent an award of damages for losses stemming from continued or increased competition rather than diminished competition—a result that otherwise would be " 'inimical' " to the antitrust laws. *Cargill,* 479 U.S. at 109–110, 107 S.Ct. at 488–489 (quoting *Brunswick* at 488, 97 S.Ct. at 697).

■ Where the challenged conduct is a merger or acquisition, this standard requires plaintiff to prove injury flowing from the anticompetitive or predatory nature of the merger or the post-merger entity. *Brunswick,* 429 U.S. at 488–89, 97 S.Ct. at 697–98.[14] The question, then, is whether Coors has alleged antitrust injury with sufficient specificity to meet the requirements of notice pleading.[15]

---

**14.** This does not mean, necessarily, that plaintiff must prove the merger actually drove it from the market before it can recover under § 4 of the Clayton Act. *Brunswick,* 429 U.S. at 489 n. 14, 97 S.Ct. at 697–98. The short-term effect of some types of anticompetitive behavior, e.g., below-cost pricing, may be to stimulate price competition. *Id.* What plaintiff must show is an injury that reflects the anticompetitive effect either of the antitrust violation or of anticompetitive acts made possible by the violation. *Id.* at 489, 97 S.Ct. at 697–98.

**15.** While *Cargill* requires antitrust plaintiffs to plead standing and antitrust injury as necessary elements of claims for damages under the Clayton Act, it does not heighten the notice standard for pleading those elements. The rule in this circuit has been that complex antitrust litigation is subject to no greater pleading requirements than the Rules of Civil Procedure provide for ordinary litigation. *See, e.g., Perington,* 631 F.2d at 1372–73 (amended complaint charging conspiracy to violate antitrust laws sufficient to give

Defendants contend predation is a necessary element of antitrust injury in antitrust actions between competitors and argue the post-acquisition Miller–Molson combination lacks the dominant market share necessary to engage in predatory conduct. Coors' "injury," they argue, would be the result not of anticompetitive conduct or anticompetitive acts made possible by such conduct, but of "tough" competition. (Miller Mem. Supp. Mot. Dismiss at 3.) Defendants contend that under these circumstances, Coors is asking this court to protect a competitor, not competition, which is the "inimical" result against which the Supreme Court has cautioned. *Id.* To support their conclusion, defendants cite a case in which an earlier antitrust challenge to the Miller–Molson USA transaction was rejected on the same grounds. *See Pearl Brewing Co. v. Miller Brewing Co.*, 1993–2 Trade Cases ¶ 70,370, 1993 WL 424236, *2–3 (W.D.Tex.1993) (adopting magistrate judge's Recommendation), *aff'd* 52 F.3d 1066 (5th Cir. April 6, 1995) (TABLE, No. 94–50509).

In *Pearl,* the United States District Court for the Western District of Texas rejected two brewers' efforts to enjoin the Miller–Molson USA acquisition on grounds the plaintiff-competitors had failed to establish antitrust injury. The court found the post-acquisition Miller–Molson combination would have an insufficient share of the defined relevant market (approximately 23%) to engage in predatory conduct, and agreed with Miller's experts that the acquisition would result in increased, rather than decreased, competi-

tion. *Id.* at *3. Because the conduct at issue was " 'not activity forbidden by the antitrust laws,' " it could not give rise to an "antitrust injury" no matter how damaging it was to plaintiffs' business. *Id.* at *4 (quoting *Cargill,* 479 U.S. at 116, 107 S.Ct. at 492).

Coors disputes *Pearl* applies in this case because the Alliance, viewed in light of the Coors–Molson Licensing Agreement, is anticompetitive on its face. Coors maintains the post-acquisition Miller–Molson combination by definition restrains Coors' competitive behavior, "automatically" lessening competition in the North American beer market. (Coors Mem. Opp. Miller Mot. Dismiss at 20.) According to Coors, *Pearl* is distinguishable because the antitrust challenge was brought by brewing companies that, unlike Coors, had no contractual relationship with the entity their competitor was acquiring. (Mem. Opp. Miller Mot. Dismiss at 29 n. 17.) It is this contractual relationship, Coors argues, that Miller is leveraging in this case to restrain trade, and which transforms Miller's "tough competition" into anticompetitive conduct causing antitrust injury to Coors. *Id.*[16]

The parties' logomachy reduces to opposite views on an ultimate issue in this case, *viz,* whether the post-acquisition Miller–Molson Alliance has injured Coors in a way the antitrust laws were designed to prevent. Coors' Complaint must stand or fall on the question of whether it has asserted factual allegations that, if proved, tend to establish an injury that flows from a threatened or actual restraint on competition. *See, e.g.,*

fair notice of basis of claim); *New Home Appliance Center, Inc. v. Thompson,* 250 F.2d 881 (10th Cir.1957); *c.f. Mountain View Pharmacy v. Abbott Laboratories,* 630 F.2d 1383, 1387–88 (10th Cir.1980) (blanket statement that twenty-eight defendants conspired to fix prices on drug sales to thirteen plaintiffs provided inadequate notice for responsive pleading). *Cargill* does not, in my opinion, alter this general rule. *See generally* Wright, C. *Law of Federal Courts,* § 68 at 475–76 (5th ed. 1994) (efforts by some district courts to apply strict rules as to the contents of antitrust complaints generally resulted only in a waste of time and longer pleadings, with no corresponding gain).

**16.** Without relying on this document in ruling on the present motion to dismiss, I note Coors has come forward with an expert affidavit to support its contentions regarding the anticompetitive ef-

fects of the Alliance. In this affidavit, submitted as part of Coors' pending motion for preliminary injunction, Dr. Douglas Greer explains the nature of the United States and North American beer markets, and the parties' relevant status in those markets both generally as well as in the "premium" and "light" market segments. According to Dr. Greer, the Miller–Molson combination, considered in light of both Coors' status as *"the* main competitor" to Miller and Anheuser–Busch in these markets and the broad discretionary power over Coors' brands granted Molson under the Coors–Molson Licensing Agreement, "may substantially lessen competition" in the U.S. market generally and in the "premium" and "light" beer market segments in particular. *See* Affid. of Professor Douglas F. Greer, Ph.D. in Supp. Pl.'s Mot. Preliminary Inj., p. 3–5 (emphasis original).

*Perington Wholesale, Inc. v. Burger King Corp.*, 631 F.2d 1369, 1372–73 (10th Cir.1979).

While Coors' theory in this regard is less than clear, I find Coors has pleaded sufficient factual allegations to survive the present motion to dismiss. The Tenth Circuit's opinion on Molson's interlocutory appeal of Judge Matsch's denial of Molson's motion for stay, supports this conclusion.[17] At this stage of the proceedings, Coors' ability to marshall the necessary facts to support its theory of antitrust injury has not been tested and dismissal is inappropriate. If Coors is unable during discovery to marshall those facts, defendants no doubt will renew their challenge to the sufficiency of Coors' claims and the issue will be revisited on a motion for summary judgment.

### 2. Standing to Claim Damages

Even if Coors is found to have adequately alleged antitrust injury, Miller and Molson argue Coors lacks standing to pursue a claim for treble damages because the injury Coors alleges is based on "sheer speculation" as to harm Coors "might hypothetically" suffer in the future. (Defs.' Mem. Supp. Mot. Dismiss at 14.) This argument is not without merit. As I review the record, I find few allegations that the Alliance has resulted in *actual* harm to Coors. The gist of Coors' Clayton Act claim for damages is that the Alliance's effect "may be substantially to lessen competition in the United States [and North American] beer market[s]." Compl., ¶ 47.

Again, however, I am reluctant to dismiss Coors' claim without first giving it an opportunity to develop and refine its theory of antitrust injury. In its Complaint, Coors alleges the Alliance threatens to preclude it from implementing unified competitive strategies in the North American market except at the mercy of Miller and Molson, and alleges this threat has had a "current tangible impact" on its operations. (Coors' Mem. Opp. Mot. Dismiss at 18.) Coors asserts it has been forced to make choices, investments and plans it would not otherwise have made in order to protect itself from the threat it perceives is presented by the Alliance.[18] *See id.* at 27–31; Coors' Compl., ¶¶ 7–10, 40, 44, 45, 48, 53. These assertions, if true, create an inference that Coors has suffered actual harm from the allegedly anticompetitive conduct of Miller and Molson.

I also find Coors has satisfied the other factors to be considered in an evaluation of antitrust standing. Coors has alleged a causal connection between its injuries and the defendants' allegedly anticompetitive conduct, and has alleged facts from which anticompetitive intent can be inferred. *See* n. 3, *supra.* Given the unique factual underpinnings of Coors' claims and the limited number of parties involved, there appears to be little risk of duplicative recoveries or the need for complex damages apportionment as would militate against conferring standing in this case. Under these circumstances, I find Coors has satisfied the requirements articulated in *Cargill* and deny defendants' motion to dismiss for lack of standing.

### D. Sufficiency of Coors' Claims Under Rule 12(b)(6)

Finally, defendants assert Coors' Complaint should be dismissed for failure to state a claim upon which relief can be granted. As grounds, defendants argue Coors has

---

17. Acknowledging the murky nature of Coors's theory regarding the anticompetitive effect of Miller's alleged ability, through the Alliance, to control Coors, the Tenth Circuit in dicta nevertheless stated Coors had "presented a sufficient factual outline to suggest it might develop a theory" of antitrust injury, and stated Coors was "therefore entitled to conduct discovery and refine its theories." *Coors v. Molson et al.*, 51 F.3d at 1518 (inviting Molson, however, to challenge the legal sufficiency of Coors' claims "at a later point in this litigation"). As I indicated *supra*, at n. 7, Coors' ability to prove Miller has sufficient control over Coors to restrain competition in the U.S. and North American beer markets is con-

founded somewhat by the Tenth Circuit's imposition of a stay of Coors' claims against Molson to the extent those claims relate to the Coors–Molson Licensing Agreement upon which that control is premised.

18. For example, Coors asserts the Miller–Molson Alliance has already affected competition in the U.S. market by preventing Coors from pursuing an intention of using Molson to brew Coors beer in Canada for import into certain areas of the U.S. where it would be cost-effective to do so, e.g., northern New England. Mem. Opp. Mot. Dismiss at 27 (citing Greer Affid., ¶ 34).

alleged injury only to itself, and not to competition as is a prerequisite to any action under the antitrust laws. Because antitrust standing cannot be established without antitrust injury, *Sharp v. United Airlines,* 967 F.2d at 406, my finding that Coors's Complaint cannot, at this stage of the proceedings, be dismissed for lack of standing necessarily disposes of defendants' arguments. Again, if Coors is unable during discovery to marshall facts to support its theory of antitrust injury, defendants will be free to renew their challenge. No further comment on the question of antitrust injury is required.

### III. *Conclusion*

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction, lack of standing and failure to state a claim upon which relief can be granted, in which all defendants join, is DENIED, and the motion to dismiss for lack of personal jurisdiction, in which the Canadian Molson defendants join, is also DENIED.